UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MICHAEL COLEMAN,

                              Plaintiff,

v.

                              Case # 16-CV-6179-FPG

                              DECISION AND ORDER

CITY OF ROCHESTER,
CHIEF OF ROCHESTER POLICE, MICHAEL CIMINELLI,
ROCHESTER POLICE DEPARTMENT INVESTIGATOR
JOHN FIORICA, ROCHESTER POLICE DEPARTMENT
INVESTIGATOR VINCENT POST, and ROCHESTER
POLICE DEPARTMENT INVESTIGATOR
IGNACIO TORRES,

                              Defendants.

**INTRODUCTION**

On March 18, 2016, Plaintiff Michael Coleman, then proceeding *pro se*, filed a complaint and motion to proceed *in forma pauperis*. ECF Nos. 1-2. Nearly a year later, on February 3, 2017, Coleman's counsel filed an amended complaint against Defendants the City of Rochester, Chief of Police Michael Ciminelli, and Rochester Police Department (RPD) Investigators John Fiorica, Vincent Post, and Ignacio Torres. ECF No. 4. Embedded in the amended complaint's repetitive and verbose allegations, which span over sixty pages, are seventeen claims: (1) a general, catch-all "deprivation of civil rights" claim; (2) false arrest; (3) false imprisonment; (4) assault; (5) battery; (6) excessive force; (7) failure to intervene; (8) a violation of the New York constitution, Article 1, § 12; (9) negligence; (10) malicious abuse of process; (11) a *respondeat superior* claim against the City; (12) a claim against the City under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); (13) yet another *Monell* claim; (14) an equal protection claim; (15) a claim alleging a

violation of Coleman's right to a fair trial under the Sixth Amendment; (16) a claim for spoliation of evidence; and (17) malicious prosecution. ECF No. 4.

On September 22, 2017, the Court granted Coleman's motion to proceed *in forma pauperis* and ordered the amended complaint served on Defendants. ECF No. 5.

Just over a month later, on October 27, 2017, Defendants filed a motion to dismiss the amended complaint. ECF No. 6. Approximately six months later, Coleman filed a motion to submit supplemental authority. ECF No. 9. Both motions are currently pending before the Court. For the reasons that follow, Coleman's motion to submit supplemental authority is GRANTED and the Court has considered his submission and Defendants' motion to dismiss is MOOT in light of the Court's dismissal of Coleman's amended complaint under 28 U.S.C. § 1915(e).

## LEGAL STANDARD

Under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1), the Court shall dismiss any portion of a complaint filed by a prisoner proceeding *in forma pauperis* if it fails to state a claim upon which relief may be granted. The Court's review echoes its analysis upon a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6): it accepts all facts alleged in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). The Court does not, however, "credit conclusory allegations or legal conclusions couched as factual allegations." *Id.* (quoting *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013)).

A complaint states a claim when it contains "enough facts to state a claim for relief that is plausible on its face," *i.e.*, when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489 (2d Cir. 2018) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

# BACKGROUND[1]

The background of this case is gleaned from the factual assertions in the amended complaint, which are sparse and disjointed. What storyline the Court can construct reads as follows:

On January 28, 2016, Post swore to an affidavit in support of a search warrant for 326 Scio Street in Rochester that he made a so-called "controlled buy" on January 20, 2016. ECF No. 4 ¶ 40. The search warrant was executed at 326 Scio Street on February 3, 2016. *Id.* ¶ 41. While it was being executed, Fiorica shot Coleman with a shotgun[2], injuring his shoulder, finger, and head. *Id.* ¶ 42. Coleman was unarmed when he was shot. *Id.* He was subsequently arrested. *Id.* ¶ 41.

Post later falsely stated in a criminal complaint dated February 3, 2016, that Coleman sold drugs to him on that date and that no one else was present for the sale[3]. *Id.* ¶ 240. In fact, a third person sold the drugs to Post. ECF No. 4 ¶ 240. Post relayed this false information to a grand jury and Coleman was indicted based, in part, upon it. *Id.* ¶ 242. Post also testified as to this false information at trial. *Id.* ¶ 243. Torres also testified at trial, during which he stated that he and RPD had lost records, pictures, and documents from the investigation into Fiorica shooting Coleman. *Id.* ¶ 244. Coleman was ultimately convicted of Criminal Sale of a Controlled Substance in the Third Degree[4]—one of six counts for which he was indicted—and he is currently incarcerated for that conviction. ECF No. 4 ¶ 5; ECF No. 8 ¶ 21.

---

[1] The facts in the amended complaint are accepted as true for the purposes of the Court's review, as explained above. *Nielsen*, 746 F.3d at 62.

[2] Coleman makes several legal conclusions in his recitation of the facts—*e.g.*, that he was arrested without probable cause and that Fiorica shot him without justification—which the Court may not accept as true. *Nielsen*, 746 F.3d at 62.

[3] It is unclear to the Court whether Coleman is referring to the controlled buy made on January 20, 2016, or another, separate buy executed on February 3, 2016.
[4] N.Y. Penal Law § 220.39.

**DISCUSSION**

I. **Preliminary Matters**

The Court must address three preliminary matters before it turns to its analysis. First, Defendants move to dismiss all state-law claims because Coleman did not timely file his notice of claim. ECF No. 6-5 at 2-3. In response, Coleman argues that he is currently seeking relief in state court to get an extension of time, *nunc pro tunc*, to file the notice. ECF No. 8 ¶¶ 15-19. The Court declines to rule on this argument since all of Coleman's state-law claims are dismissed.

Second, Coleman's response to Defendants' motion states that his conviction was appealed to the Supreme Court of the State of New York, Appellate Division, Fourth Judicial Department and that the appeal is still pending. ECF No. 8 ¶ 21. Since the Court has no further information from the parties and can find none based on its reasearch, it assumes Coleman's conviction is still valid.

Finally, the Court is troubled by Coleman's amended complaint; not only because of its tedious and discursive nature, but because large portions of it are copied verbatim from another complaint that was filed by a different attorney in this Court.

On April 22, 2016—approximately ten months before the amended complaint was filed in this action—Delmar Lipford filed a complaint against the City of Rochester and several RPD employees alleging fourteen federal- and state-law claims. *Lipford v. City of Rochester*, No. 16-CV-6266-FPG, 2017 WL 4344633, at *1 (W.D.N.Y. Sept. 29, 2017). The fourteen claims in *Lipford* are the same as the first fourteen claims in this case. What's more, they are in the same order with the same headings and subheadings for each claim. For example, the twelfth claim in the *Lipford* complaint has the following heading on page 25: "TWELFTH CLAIM FOR RELIEF MUNICIPAL LIABILITY UNDER MONELL UNDER 42 U.S.C. § 1983 ARISING FROM

UNCONSTITUTIONAL MUNICIPAL POLICIES RELATING TO THE RPD'S CUSTOM, PRACTICE, AND POLICY OF UNLAWFULLY EMPLOYING EXCESSICE FORCE IN THE COURSE OF EFFECTUATING ARRESTS[.]" That exact heading also exists in the amended complaint, but at page 19. The following paragraph is the third paragraph down from the heading replicated above in the *Lipford* complaint; it maintains the same position in the amended complaint in this case, but is renumbered as paragraph 107:

> Use of force is a defining issue in modern policing. Police officers are entrusted, empowered, and in certain circumstances, obligated to use force against citizens. In exchange for this grant of power, citizens require that the use of force be governed by a set of standards. These standards stem from the Fourth Amendment to the United States Constitution, which requires that the use of force must be reasonable. Reasonable use of force and constitutional policing practices require equality in the treatment of individuals, proper application of force, and accountability for officers that use force without justification.

As a final example, both the *Lipford* complaint and the amended complaint—at paragraphs 209 and 210 and 142 and 143, respectively—contain the same error: they explain an event that occurred on September 18, 2018, a date that passed at least a year after both complaints were filed.

The Court can find no cases in the Second Circuit in which a district court sanctioned counsel for copying parts of a complaint from another case. At least one other district court outside the Second Circuit, however, has done so. *Brown v. Ameriprise Fin. Servs., Inc.*, 276 F.R.D. 599, 606-08 (D. Minn. 2011) (dismissing complaint as sanction for copying from a complaint in a different case).

The Court declines to sanction Coleman or his counsel in any capacity at this time. However, the Court reminds Coleman's counsel that, under Federal Rule of Civil Procedure 11(b)(3), an attorney who files a pleading with the Court certifies that the facts in it have evidentiary support or will likely have evidentiary support after further investigation or discovery. The Court now turns to its review of Coleman's amended complaint.

## II. Coleman's First Claim Is Dismissed.

Coleman's first claim is styled as a "catch all" civil rights claim, which, as explained, the Court has seen and dismissed before. *See Lipford*, 2017 WL 4344633, at *3-4; *see also Keene v. City of Rochester*, No. 6:17-cv-06708-MAT, 2018 WL 1697486, at *3 (W.D.N.Y. April 7, 2018). In both of those cases, the Court dismissed the claim because it was vague, conclusory, and failed to give the defendants fair notice of the claim's basis. *See Keene*, 2018 WL 1697486, at *3. The Court will do the same here.

## III. Coleman's Second, Third, Tenth, and Seventeenth Claims Are Dismissed Because His Conviction Establishes Probable Cause for His Arrest.

If probable cause exists in support of an arrest, a plaintiff cannot maintain an action for false arrest, false imprisonment, or malicious prosecution under § 1983 or state law. *E.g.*, *Udechukwu v. City of New York*, 333 F. Supp. 3d 161, 166-67 (E.D.N.Y. 2018). Probable cause exists where a plaintiff is arrested and convicted on at least one count stemming from that arrest. *Corsini v. Brodsky*, 731 F. App'x 15, 18 (2d Cir. 2018) (summary order).

Here, Coleman was convicted of Criminal Sale of a Controlled Substance in the Third Degree stemming from his arrest on February 3, 2016. That conviction bars his second, third, and seventeenth claims for false arrest, false imprisonment, and malicious prosecution, respectively. Accordingly, they are dismissed.

Coleman's tenth claim for malicious abuse of process is a tougher question. As the Southern District of New York recently noted, "while the law is not entirely settled on this point, the weight of authority holds that the presence of probable cause negates a claim for abuse of criminal process." *Pinter v. City of New York*, 976 F. Supp. 2d 539, 568-69 (S.D.N.Y. 2013). Only one other case has cited that conclusion, *Slater v. Mackey*, No. 12-CV-04325 (NGG)(RML), 2015 WL 6971793, at *10 (E.D.N.Y. Nov. 10, 2015), while other, recent cases do not mention

probable cause in the context of an abuse-of-process claim, *Fielder v. Incandela*, 222 F. Supp. 3d 141, 164 (E.D.N.Y. 2016). Here, since Coleman was convicted as a result of his arrest, establishing probable cause, the Court will follow the weight of authority outlined in *Pinter* and dismiss Coleman's tenth claim for malicious of abuse of process.

## IV. Coleman's Fourth, Fifth, and Sixth Claims Are Dismissed Because the Amended Complaint Fails to State a Claim.

When a plaintiff asserts claims for assault, battery, and excessive force against a law enforcement officer, the same standard applies to all three claims: whether the officer's use of force was objectively reasonable. *Humphrey v. Landers*, 344 F. App'x 686, 688 (2d Cir. 2009) (quoting *Posr v. Doherty*, 944 F.2d 91, 94-95 (2d Cir.1991)) (summary order) ("Except for § 1983's requirement that the tort be committed under color of state law, the essential elements of excessive force and state law assault and battery claims are substantially identical." (alterations omitted)); *Estate of Jaquez v. City of New York*, 104 F. Supp. 3d 414, 433 (S.D.N.Y. 2015) ("Law enforcement officers may use only such force as is objectively reasonable under the circumstances.").

When a law enforcement officer uses deadly force to apprehend a suspect as Fiorica did in this case, it is not objectively unreasonable if "the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Soto v. City of New York*, 283 F. Supp. 3d 135, 141 (S.D.N.Y. 2017) (quoting *O'Bert ex rel. Estate of O'Bert v. Vargo*, 331 F.3d 29, 36 (2d Cir. 2003)); *see also Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (quoting *Tennessee v. Garner*, 471 U.S. 1, 11 (1985)). In making this determination, the Court should pay "careful attention to the facts and circumstances of [the] case, including the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by

flight." *Kisela*, 138 S. Ct. at 1152 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (quoting *Graham*, 490 U.S. at 396-97). And "the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.*

Here, Coleman's fourth, fifth, and sixth claims for assault, battery, and excessive force fail to state a claim because the Court has insufficient facts to determine whether Fiorica's use of force was reasonable. The Court knows only that a search warrant was executed at a residence in which Coleman was present, he was unarmed, Fiorica shot him, and he was arrested. The Court does not know the context of Coleman's interaction with Fiorica. The Court may allow Coleman's claims to proceed if, for example, Fiorica shot Coleman after he surrendered to the arresting officers and posed no threat to them. On the other hand, the claims may be dismissed if Coleman was shot while he was charging at Fiorica or another officer with a knife[5]. Regardless, the Court cannot make a determination with the facts before it. Consequently, Coleman's fourth, fifth, and sixth claims are dismissed.

**V.     Coleman's Seventh Claim Is Dismissed Because Coleman's Claims for False Arrest and Excessive Force Have Been Dismissed.**

In Coleman's amended complaint, he appears to allege that Fiorica, Post, and Torres had a duty to intervene and prevent all of the constitutional violations that they visited upon him. *See* ECF No. 4 ¶¶ 75-77. Case law does not support that view; based on the Court's review, a failure-

---

[5] The Court assumes that Coleman means he did not possess a firearm when he says he was "unarmed." That leaves open the possibility that he possessed another weapon, such as a knife. Of course, if Coleman had clearly explained the circumstances of the encounter, the Court would not be left to guess at the meaning of his explanation.

to-intervene claim stands only where a defendant police officer failed to intervene in another's use of excessive force or false arrest. *See O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 2003) (citing cases from various courts—including the Supreme Court, Courts of Appeals, and a district court—that deal with failure-to-intervene claims for excessive force and false arrest). As explained above, the Court has dismissed Coleman's claims for false arrest and excessive force. Accordingly, his seventh claim for a failure to intervene also fails.

## VI. Coleman's Eighth Claim Is Dismissed Because It Fails to Put Defendants on Notice of Its Basis.

Coleman's eighth claim asserts a violation of his rights guaranteed under § 12 of the New York Constitution, which mirrors the rights guaranteed under the Fourth Amendment of the United States Constitution. *See* ECF No. 4 ¶ 11; *see also Espinoza v. City of New York*, 194 F. Supp. 3d 203, 207-08 (E.D.N.Y. 2016). The Court need not explain the elements of such a claim, since Coleman fails to allege the facts that support it. Instead, he provides only conclusory allegations that Fiorica, Post, and Torres "deprived [him] of rights guaranteed to him by the New York State Constitution" and that he was "injured and harmed" as a result. ECF No. 4 ¶¶ 82, 84-85. Those allegations do not give Defendants fair notice of the grounds upon which the claim rests. *See Doe v. Selsky*, 663 F. Supp. 2d 213, 214 (W.D.N.Y. 2009) (quoting *Boykin v. KeyCorp*, 521 F.3d 202, 215-16 (2d Cir.2008)) ("[A]ll pleadings, *pro se* or otherwise, must contain enough factual allegations to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'").

## VII. Coleman's Ninth, Eleventh, Fourteenth, Fifteenth, and Sixteenth Claims Are Dismissed.

Coleman's ninth claim for negligence is dismissed because he alleges that Fiorica, Post, and Torres were acting within the scope of their employment during the alleged events. ECF No.

4 ¶¶ 26. To properly state a claim, he must allege that they were *not* acting within the scope of their employment. *Velez v. City of New York*, 730 F.3d 128, 136-37 (2d Cir. 2013). Consequently, Coleman's ninth claim is dismissed with prejudice.

Coleman's fourteenth claim alleges a violation of his equal protection rights guaranteed under the Fourteenth Amendment. ECF No. 4 ¶ 220. Specifically, Coleman alleges that Defendants' excessive use of force, unlawful detention, imprisonment, and search, and malicious abuse of process were all done based on Coleman's race. *Id.* ¶¶ 226, 228. As explained above, however, Coleman's claims for those alleged violations of his rights have all been dismissed. His equal-protection claim thus does not survive. *See Ali v. Connick*, 136 F. Supp. 3d 270, 277 (E.D.N.Y. 2015) (dismissing equal-protection claim premised on excessive force and false arrest when those claims were withdrawn).

The fifteenth claim alleges that Post and Torres violated Coleman's Sixth Amendment right to a fair trial. ECF No. 4 ¶¶ 239-245. Where a plaintiff was convicted and his conviction is still valid, however, a fair-trial claim cannot lie. *E.g.*, *Bailey v. City of New York*, 79 F. Supp. 3d 424, 445 (E.D.N.Y. 2015) ("A fair trial claim that would impugn the validity of a conviction must be dismissed."); *Jasper v. Fourth Court of Appeals*, No. 08 Civ. 7472(LAP), 2009 WL 1383529, at *1 (S.D.N.Y. May 18, 2009) ("Since plaintiff's conviction remains valid, plaintiff's fair trial claim is not cognizable under § 1983, and it must be dismissed as to all defendants pursuant to 28 U.S.C § 1915(e)(2)(B)(ii).").

The sixteenth claim, which alleges spoliation of evidence, is not a claim, but a sanction, and therefore must be dismissed with prejudice. *See United States v. Prado*, 143 F. Supp. 3d 94, 101 (S.D.N.Y. 2015) ("Finally, defendants ask this Court to impose sanctions on the Government for spoliating evidence . . . ."); *see also Landis v. Remington Arms Co.*, No. 8:11-CV-1377, 2012

WL 6098269, at *2-4 (N.D.N.Y. Dec. 7, 2012) (explaining that spoliation of evidence is not a viable cause of action under New York law).

Finally, since all of Coleman's state-law claims have been dismissed, his *respondeat superior* claim against the City cannot stand. *Morales v. City of New York*, 59 F. Supp. 573, 583 (S.D.N.Y. 2014) (citing *Velez*, 730 F.3d at 137) ("Finally, because Plaintiff has not demonstrated any basis for liability on the part of any of the City's agents or employees, her *respondeat superior* claim also fails."). Consequently, Coleman's eleventh, fourteenth, and fifteenth claims for *respondeat superior*, violation of his right to equal protection, and violation of his right to a fair are all dismissed and his ninth and sixteenth claims for negligence and spoliation of evidence are dismissed with prejudice.

**VIII. Coleman's Twelfth and Thirteenth Claims Are Dismissed.**

In *Monell*, the Supreme Court held that municipalities could be held liable under § 1983 "for constitutional deprivations visited pursuant to governmental 'custom' even though a custom has not received formal approval through the body's official decisionmaking channels." 436 U.S. at 690-91. The Supreme Court included customs since "persistent and widespread discriminatory practices of state officials . . . could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Id.* at 691 (quoting *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 167-68 (1970)).

In his twelfth claim, Coleman alleges that RPD has a custom or usage of using excessive force during arrests. ECF No. 4 ¶ 106. As explained above, the Court found that Coleman did not plausibly state a claim for excessive force. Thus, his twelfth claim must fail because he has not properly alleged an underlying excessive-force claim. *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found no underlying constitutional

violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct.").

As for his thirteenth claim, Coleman alleges that RPD has a custom or usage of charging individuals with crimes in retaliation for failing to follow officers' orders. Coleman's claim fails for two reasons. First, he claims that RPD's preferred "cover charges" are disorderly conduct, resisting arrest, obstruction of governmental administration, trespass, and harassment. ECF No. 4 ¶¶ 200, 207. Other officers may engage in that conduct, but Coleman was not charged with any of those crimes. He was charged with Possession of a Controlled Substance in the Third and Fourth Degrees, Criminally Using Drug Paraphernalia in the Second Degree, and Criminal Sale of a Controlled Substance in the Third Degree and convicted only on the last charge. ECF No. 4 ¶¶ 1, 5. Consequently, the Defendants did not engage in the very custom that he alleges is widespread in RPD. Second, nowhere in his amended complaint does Coleman allege that the Defendants charged Coleman with a crime because he was not following their instructions. Thus, even if such a custom exists, the Court cannot hold the City liable for it because Fiorica, Post, and Torres did not act pursuant to it. *See Monell*, 436 U.S. at 690-91. As a result, Coleman's twelfth and thirteenth claims are dismissed.

## IX. Opportunity to Amend

Coleman may be able to amend his amendment complaint so that it properly states a claim for federal- and state-law violations stemming from the events of February 3, 2016. The Court does note that his ninth and sixteenth claim for negligence and spoliation of evidence are dismissed with prejudice. As for his other claims, however, Coleman has until January 25, 2019, to file a motion to amend pursuant to Local Rule of Civil Procedure 15. If Coleman elects to file a motion to amend, which must include a proposed second amended complaint, he and his counsel must

comply with Federal Rule of Civil Procedure 8(a)(2), which requires a complaint to contain "a *short* and *plain* statement of the claim showing that the pleader is entitled to relief" (emphasis added). If Coleman does not file the requisite motion by January 25, 2019, his amended complaint will be dismissed for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(b)(ii) and this case will be closed without further order.

## CONCLUSION

For the foregoing reasons, Coleman's motion to submit supplemental authority is GRANTED and the Court has considered his submission and Defendants' motion to dismiss is MOOT in light of the Court's dismissal of Coleman's amended complaint under 28 U.S.C. § 1915(e).

If Coleman does not file a motion to amend and the amended complaint is therefore dismissed as of January 25, 2019, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and that leave to appeal to the Court of Appeals as a poor person is denied. *See Coppedge v. United States*, 369 U.S. 438 (1962). Plaintiff should direct requests to proceed on appeal as a poor person to the United States Court of Appeals for the Second Circuit in accordance with Federal Rule of Appellate Procedure 24.

IT IS SO ORDERED.

Dated: December 21, 2018
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court